**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**


**JOHN E. N.,[1]**                              **1:19-cv-00895-BR**

           **Plaintiff,**                   **OPINION AND ORDER**

**v.**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

           **Defendant.**


**JOHN E. HAAPALA, JR.**
401 W. 10th Ave., Ste. 240
Eugene, OR  97401
(541) 345-8474

**KATIE TAYLOR**
Harder, Wells, Baron, & Manning, P.C.
474 Willamette St.
Eugene, OR  97401
(541) 686-1969

          Attorneys for Plaintiff

_____

     [1] In the interest of privacy this Court uses only the first
name and the initial of the last name of the nongovernmental
party in this case.  Where applicable, this Court uses the same
designation for the nongovernmental party's immediate family
member.


1 - OPINION AND ORDER

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**KATHERINE B. WATSON**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2139

        Attorneys for Defendant

**BROWN, Senior Judge.**

Plaintiff John E. N. seeks judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) in which the Commissioner denied Plaintiff's applications for Disability Insurance Benefits (DIB) under Title II of the Social Security Act and Supplemental Security Income (SSI) under Title XVI of the Social Security Act.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

2 - OPINION AND ORDER

## ADMINISTRATIVE HISTORY

On March 23, 2016, Plaintiff protectively filed his application for DIB and SSI benefits.  Tr. 19, 269, 271.[2] Plaintiff initially alleged a disability onset date of August 6, 2013.  Tr. 19, 269, 271.  Plaintiff's application was denied initially and on reconsideration.  On March 11, 2018, Plaintiff amended his alleged disability onset date to December 31, 2014. Tr. 362.  An Administrative Law Judge (ALJ) held a hearing on May 4, 2018.  Tr. 19, 40-60.  Plaintiff and a vocational expert (VE) testified at the hearing.  Plaintiff was represented by an attorney at the hearing.

On June 28, 2018, the ALJ issued an opinion in which she found Plaintiff is not disabled and, therefore, is not entitled to benefits.  Tr. 19-34.  Plaintiff requested review by the Appeals Council.  On April 5, 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the final decision of the Commissioner.  Tr. 1-3.  *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

On June 7, 2019, Plaintiff filed a Complaint in this Court

_____

[2] Citations to the official Transcript of Record (#7) filed by the Commissioner on November 19, 2019, are referred to as "Tr."

seeking review of the Commissioner's decision.

## BACKGROUND

Plaintiff was born on January 19, 1967.  Tr. 32, 269, 271.
Plaintiff was 46 years old on his alleged disability onset date.
Tr. 32.  Plaintiff completed the 11th grade of high school but
did not graduate or obtain a G.E.D.  Tr. 32, 44, 311.  Plaintiff
has past relevant work experience as a cement mason.  Tr. 32.

Plaintiff alleges disability due to a left-knee injury,
right-shoulder injury, tennis elbow of the right arm, learning
disability, depression, and anxiety.  Tr. 61.

Except as noted, Plaintiff does not challenge the ALJ's
summary of the medical evidence.  After carefully reviewing the
medical records, this Court adopts the ALJ's summary of the
medical evidence.  *See* Tr. 22-32.

## STANDARDS

The initial burden of proof rests on the claimant to
establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110
(9th Cir. 2012).  To meet this burden, a claimant must
demonstrate his inability "to engage in any substantial gainful
activity by reason of any medically determinable physical or

4 - OPINION AND ORDER

mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). "It is more than a mere scintilla [of evidence] but less than a preponderance." *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for evaluating a claimant's testimony, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence

whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## <u>DISABILITY ANALYSIS</u>

### I.   The Regulatory Sequential Evaluation

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity (SGA). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Keyser*, 648 F.3d at 724.

6 - OPINION AND ORDER

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1520(e), 416.920(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform

work he has done in the past.  20 C.F.R. §§ 404.1520(a)(4)(iv),
416.920(a)(4)(iv).  *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, he must determine
whether the claimant is able to do any other work that exists in
the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v),
416.920(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here
the burden shifts to the Commissioner to show a significant
number of jobs exist in the national economy that the claimant
can perform.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d
1068, 1071 (9th Cir. 2010).  The Commissioner may satisfy this
burden through the testimony of a VE or by reference to the
Medical-Vocational Guidelines (or the grids) set forth in the
regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If
the Commissioner meets this burden, the claimant is not
disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## **ALJ'S FINDINGS**

At Step One the ALJ found Plaintiff has not engaged in
substantial gainful activity since December 31, 2014,
Plaintiff's alleged amended disability onset date.  Tr. 22.

At Step Two the ALJ found Plaintiff has the severe
impairments of "left knee osteoarthritis, status post right

shoulder acromioplasy, lumbar degenerative disc disease, unspecified neurocognitive impairment, unspecified depression, and unspecified anxiety."  Tr. 22.

At Step Three the ALJ concluded Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1.  Tr. 22.  The ALJ found Plaintiff has the RFC to perform light work with the following limitations:  can occasionally lift and/or carry 20 pounds; can frequently carry 10 pounds; can stand and/or walk for a total of about 6 hours and sit for a total of 6 hours in an 8-hour workday with normal breaks; must alternate sitting and standing positions as needed while remaining on task; can occasionally climb ramps and stairs; cannot climb ladders, ropes, and scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; can occasionally reach overhead with his right arm; and can understand and carry out simple instructions.  Tr. 24.

At Step Four the ALJ concluded Plaintiff is unable to perform his past relevant work.  Tr. 32.

At Step Five the ALJ found Plaintiff can perform other jobs that exist in the national economy such as electronics worker, hand-finisher, and stuffer.  Tr. 33.  Accordingly, the ALJ found

Plaintiff is not disabled.  Tr. 34.

## DISCUSSION

Plaintiff contends the ALJ erred when she (1) failed to provide clear and convincing reasons for discounting Plaintiff's subjective symptom testimony and (2) failed to provide legally sufficient reasons for discounting the opinions of Daniel Selinger, M.D., an examining physician; Claudia Lake, Psy.D., an examining psychologist; and Lisa Morris, FNP, Plaintiff's primary-care provider.

**I.    The ALJ did not err when she discounted Plaintiff's subjective symptom testimony.**

Plaintiff contends the ALJ erred when she failed to provide clear and convincing reasons for discounting Plaintiff's symptom testimony.

### A.    Standards

The ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)(quoting *Lingenfelter*

*v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).  The claimant need not show his "impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Garrison*, 759 F.3d at 1014 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).  A claimant is not required to produce "objective medical evidence of the pain or fatigue itself, or the severity thereof." *Id*.

If the claimant satisfies the first step of this analysis and there is not any affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15. *See also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each.").  General assertions that the claimant's testimony is not credible are insufficient. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007).  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's

complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

### B.   Analysis

Plaintiff testified he stopped working in December 2014 after a work-related knee injury.  Tr. 47.  In his Adult Function Report Plaintiff stated he "can't walk without pain" and "can't pick anything up."  Tr. 318.  Plaintiff explained his medications prevent him from driving and cause him to take one-to two-hour naps often.  Tr. 54.  Plaintiff also alleges he does not work well with others, has memory problems, and has difficulty learning new things.   Tr. 49, 51-52.

The ALJ found Plaintiff's testimony is inconsistent with his activities of daily living, the medical record, and other objective findings.  Tr. 25.  For example, Plaintiff's wage records show he continued to work as a concrete finisher after December 2014.  The Court notes this work was for less than a full day and, therefore, does not qualify as substantial gainful activity.  Tr. 25, 26, 55.  Plaintiff is also able to maintain his personal care, cook meals, perform household chores, chop firewood, and shop.  Tr. 319-21, 379-80, 385, 679, 684.  Plaintiff denied needing reminders as to maintaining his personal care and does not have any difficulty managing his

finances, completing tasks, or taking his medications.  Tr. 320, 323.  Plaintiff's son also reported Plaintiff socializes with friends and family.  Tr. 339.

In addition, Plaintiff's medical records show he had knee surgeries in December 2013 and October 2014.  Tr. 367.  In December 2014, however, he reported a fifty-percent reduction in his knee pain and received a release to return to full-time work.  Tr. 367.  In 2015 Plaintiff's left-knee symptoms were treated conservatively, and his treating physician indicated Plaintiff's condition was medically stable.  Tr. 26, 366-67.  In 2016 Plaintiff reported his knee pain was "intermittent," he was given a corticosteroid injection, and his doctor reported surgical intervention was not medically indicated.  Tr. 397, 400.  In October 2016 Lisa Morris, LNP, Plaintiff's treating provider, declined to increase Plaintiff's medication for his back pain and instead recommended "lifestyle changes" and physical therapy.  Tr. 28, 655.  Plaintiff reported worsening back pain in January 2017, but in July 2017 he reported a reduction in his back pain and tried to reduce his pain medications because he was experiencing side effects.  Tr. 670, 675, 678, 685.  In October 2017 Plaintiff reported worsening left-knee pain, but a physical examination in December 2017

13 - OPINION AND ORDER

showed normal gait, normal strength, and normal range of motion. Tr. 677, 679, 684-85.

The ALJ also noted the record does not support Plaintiff's allegation of debilitating mental-health conditions including anxiety, depression, forgetfulness, and learning disability. Tr. 31. For example, in February 2015 Plaintiff restarted medication for anxiety secondary to situational stressors. Tr. 31, 419, 422. In May 2015 Claudia Lake, Psy.D., a consulting psychologist, diagnosed Plaintiff with neurocognitive impairment, depression, and anxiety. Tr. 381. The record, however, does not reflect any additional treatment for mental-health symptoms. Tr. 31. In addition, later mental-status examinations generally showed normal mood, affect, and memory. Tr. 31, 396, 411 637.

Accordingly, on this record the Court concludes the ALJ did not err when she discounted Plaintiff's symptom testimony because the ALJ provided legally sufficient evidence supported by substantial evidence in the record for doing so.

**II.  The ALJ properly discounted the opinions of Dr. Selinger, Dr. Lake, and FNP Morris.**

Plaintiff contends the ALJ erred when she discounted the medical opinions of Dr. Selinger, Dr. Lake, and FNP Morris.

A.    **Standards**

"In disability benefits cases . . . physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability - the claimant's ability to perform work." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). "In conjunction with the relevant regulations, [courts] have . . . developed standards that guide [the] analysis of an ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

"If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* When contradicted, a treating or examining physician's opinion is still owed deference and will often be "entitled to the greatest weight . . . even if it does not meet the test for controlling weight." *Orn v. Astrue,* 495 F.3d 625, 633 (9th Cir. 2007). An ALJ can satisfy the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick,* 157 F.3d at 725. "The ALJ must do more than state conclusions. He must set forth his

own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citation omitted).

Medical sources are divided into two categories: "acceptable medical sources" and "other sources." 20 C.F.R. §§ 416.913. Acceptable medical sources include licensed physicians and psychologists. 20 C.F.R. §§ 416.913(a). Medical sources classified as "other sources" include, but are not limited to, nurse practitioners, therapists, licensed clinical social workers, and chiropractors. 20 C.F.R. §§ 416.913(d).

With respect to "other sources," the Social Security Administration Regulations provide:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not acceptable medical sources, such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed acceptable medical sources under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

SSR 06-03p, at *3. Factors the ALJ should consider when determining the weight to give an opinion from those "important"

16 - OPINION AND ORDER

sources include the length of time the source has known the claimant, the number of times and frequency that the source has seen the claimant, the consistency of the source's opinion with other evidence in the record, the relevance of the source's opinion, the quality of the source's explanation of his opinion, and the source's training and expertise. SSR 06-03p, at *4. On the basis of the particular facts and the above factors, the ALJ may assign an "other source" either greater or lesser weight than that of an acceptable medical source. SSR 06-03p, at *5-6. The ALJ, however, must explain the weight assigned to such sources so that a claimant or subsequent reviewer may follow the ALJ's reasoning. SSR 06-03p, at *6. "The ALJ may discount testimony from . . . 'other sources' if the ALJ 'gives reasons germane to each witness for doing so.'" *Molina*, 674 F.3d at 1111 (quoting *Turner v. Comm'r Soc. Sec. Admin.*, 613 F.3d 1217, 1224 (9th Cir. 2010)).

**B. Analysis**

**1. Dr. Selinger**

On July 15, 2015, Dr. Selinger, a physician, examined Plaintiff. Tr. 385-88. Dr. Selinger diagnosed Plaintiff with left-knee pain, right-shoulder pain, and tennis elbow in his right arm.

Tr. 388.  Dr. Selinger opined Plaintiff can stand for up to four
hours; can sit without limitation; can lift 20 pounds
occasionally and 10 pounds frequently; cannot climb stairs or
ladders; cannot crawl or kneel; can stoop or crouch
occasionally; cannot reach overhead; can reach forward, handle,
finger, and feel frequently; and is limited when working at
heights and with heavy machinery.  Tr. 388.

          The ALJ gave Dr. Selinger's opinion "little weight" on
the grounds that it was based on a one-time examination and was
inconsistent with the medical record and Plaintiff's activities
of daily living.  Tr. 30.  For example, as previously noted, the
medical records show Plaintiff had knee surgeries in December
2013 and October 2014, but in December 2014 he reported a fifty-
percent reduction in his knee pain and received a release to
return to full-time work.  Tr. 26, 367.  In 2015 Plaintiff's
left-knee symptoms were treated conservatively, and his treating
physician indicated Plaintiff's condition was medically stable.
Tr. 26, 366-67.  In 2016 Plaintiff reported his knee pain was
"intermittent," his doctor gave him a corticosteroid injection,
and his doctor reported surgical intervention was not medically
indicated.  Tr. 397, 400.  In October 2017 Plaintiff reported
worsening left-knee pain, but a physical examination in December

2017 showed normal gait, normal strength, and normal range of
motion.  Tr. 677, 679, 684-85.  In addition, the ALJ noted
Plaintiff engaged in some work after his alleged onset date,
maintains his personal care, performs household chores, chops
firewood, walks, shops, and fishes.  Tr. 29.

The ALJ also found the medical evidence supports the
limitations she assessed as part of Plaintiff's RFC, which was
only "slightly different" than the limitations assessed by
Dr. Selinger.  Tr. 30.

### 2.  Dr. Lake

On May 26, 2015, Dr. Lake, a psychologist, examined
Plaintiff.  Tr. 378-82.  Dr. Lake diagnosed Plaintiff with
unspecified neurocognitive impairment, unspecified depression,
and unspecified anxiety.  Tr. 381.  She opined Plaintiff would
have difficulty performing simple and repetitive tasks,
performing detailed and complex tasks, accepting instructions
from supervisors, interacting with coworkers and the public,
performing work activities on a consistent basis without special
instructions, maintaining regular work attendance, and dealing
with the usual stress in the workplace.  Tr. 381-82.

The ALJ gave Dr. Lake's opinion "little weight" on the
grounds that Dr. Lake did not provide any specific functional

limitations and her opinion was inconsistent with the medical records and Plaintiff's activities of daily living. Tr. 31-32. For example, as previously noted, the record does not reflect any additional mental-health treatment. Tr. 31. In addition, subsequent mental-status examinations generally showed normal mood, affect, and memory. Tr. 31, 396, 411, 637. The ALJ also noted in 2015 Joshua Boyd, Psy.D., a state-agency psychological consultant, concluded Plaintiff did not have any severe mental-health impairments and could carry out and maintain concentration for simple tasks. Tr. 99. In 2015 and 2016 Ben Kessler, Psy.D., a state-agency psychological consultant, indicated Plaintiff's mental-health limitations were mild. Tr. 78, 117, 135. Plaintiff also takes his medications without reminders, handles his own finances, independently maintains his personal care, and performs household chores. Tr. 23, 29.

The ALJ found Dr. Lake's assessment was not supported by the record. Tr. 32.

### 3.    FNP Morris

On March 22, 2018, FNP Morris, Plaintiff's treating provider, completed a Treating Source Statement. Tr. 687-91. FNP Morris indicated Plaintiff needs to lie down throughout the day and change positions periodically. Tr. 688. She also

indicated Plaintiff can sit for 30 minutes and can stand/walk
for five minutes at one time, can sit for six hours and can
stand/walk for two hours in an eight-hour day.  Tr. 689.  She
also indicated Plaintiff needs unscheduled 15-minutes breaks
every 30 minutes throughout the day.  Tr. 690.  FNP Morris
further noted Plaintiff can frequently lift less than 10 pounds
and can occasionally lift 10-20 pounds.  Tr. 690.  She concluded
Plaintiff would be absent from work for more than four days per
month due to his medical condition.  Tr. 691.

　　　　The ALJ gave FNP Morris's opinion "little weight" on
the grounds that her opinion was internally inconsistent, she
did not provide any explanation or support for the
inconsistencies, and the medical records did not show a
significant worsening of Plaintiff's condition to warrant the
limitations she set forth.  Tr. 30.  For example, in August 2016
FNP Morris indicated Plaintiff could participate in a class or
work four hours a day, three days a week, if he had frequent
breaks and did not engage in heavy labor.  Tr. 651.  In October
2016, however, FNP Morris stated there was not any reason that
Plaintiff could not work if he was allowed to change positions
and to stand frequently.  Tr. 655.

　　　　The ALJ concluded the medical records support a

limitation for light work but fails to establish limitations to the extent opined by FNP Morris.  Tr. 30.

In summary, the Court concludes on this record that the ALJ properly discounted the opinions of Dr. Selinger, Dr. Lake, and FNP Morris because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 13th day of July, 2020.

/s/ Anna J. Brown
_____
ANNA J. BROWN
United States Senior District Judge

22 - OPINION AND ORDER